**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

CALVIN DUNCAN, et al.,

PLAINTIFF,

v.

JEFFREY LANDRY, et al.,

DEFENDANTS.

Civil Action No. 3:26-cv-460

Judge: JWD - SDJ

**STATE DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
**EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER**

1

## INTRODUCTION

Act 15 consolidates Orleans Parish's separate civil and criminal clerk-of-court offices into a single office—an exercise of authority the Louisiana Constitution expressly vests in the Legislature. La. Const. art. V, § 32. Simply by virtue of Act 15, the criminal clerk-of-court office will not exist on Monday. Neither the State Defendants (the Governor, the Attorney General, and the Secretary of State) nor this Court can change that fact. Nonetheless, in a request that appears to be unprecedented in federal caselaw, Plaintiff asks this Court to somehow enjoin the three State Defendants, override that restructuring, and install him on Monday in the office the Legislature has abolished. Respectfully, this is not the appropriate venue for Plaintiff's political disagreement—as the jurisdictional and merits defects confirm.

*First*, this Court lacks jurisdiction three times over. Sovereign immunity bars the claims against these State Defendants because none enforces Act 15. Plaintiff lacks standing because his alleged injury is neither traceable to these State Defendants nor redressable by an injunction against them. And *Pennhurst* bars the relief he seeks, which depends on this Court enforcing his view of Louisiana law against state officials.

*Second*, Plaintiff is unlikely to succeed on the merits. His *Anderson-Burdick* theory does not implicate *Anderson-Burdick* at all because he does not challenge election mechanics; he challenges the Legislature's exercise of its express constitutional authority to restructure an Orleans Parish clerk's office. La. Const. art. V, § 32. And his novel First Amendment retaliation theory cannot convert Act

1

15—passed by the Legislature as part of a broader Orleans Parish court-reform effort—into retaliation by the Governor, Attorney General, or Secretary of State, none of whom took any adverse action against Plaintiff (and the latter two of whom have no constitutional role in bicameralism and presentment).

*Third*, the equities decisively favor the State. Plaintiff seeks disfavored mandatory preliminary relief that would disrupt Act 15's legislatively prescribed transition plan and cloud the administration of Orleans Parish's courts.

The motion should be denied.

## BACKGROUND

With its enactment yesterday, Act 15 consolidates Orleans Parish's separate civil and criminal district court clerk offices into one clerk-of-court office.[1] *See* Act 15 of the 2026 Regular Session, La. State Legislature, t.ly/rV82O. The Act "abolish[es]" the "office of clerk of criminal district court for the parish of Orleans … at the end of May 3, 2026, and before the term of any other criminal clerk of court begins." Act 15, § 4. At that point, the abolished office of the criminal clerk's "authority, functions, duties, and responsibilities," along with its records, money, actions, and property, transfer to the Orleans Parish civil-district-court clerk, "who shall thereafter be referred to as the clerk of court for the parish of Orleans." *Id.*

---

[1] To that end, the bill amends a host of statutes to eliminate references to a separate "civil" or "criminal" clerk of court in Orleans. *See* La. R.S. 13:761(C) (Supplemental compensation fund); 13:1211 (Qualifications); 13:1211.1 (Election); 13:1212.1 (Expenses); 13:1213.1 (Court costs); 13:1216 (Dockets); 13:1222 (Vehicles); 13:1338 (Transfers); 13:1373, 1373.1 (Minute clerks); 13:1381 (Fees); 13:1381.3 (Expense fund); 13:1381.7 (City appropriations); 13:2515 (Writ applications); 15:85.1 (Bonds); 18:2(3) ("Clerk of court" defined); 18:444 (Parish executive committees); 18:602, 1300.7 (Vacancies); 18:1354 (Custodian of voting machines); 18:1511.2 (Supervisory committee).

Act 15 reflects a broader court-reform effort by the Legislature, not a one-off measure aimed at Plaintiff. *See* Matt Bruce, *Debate intensifies as bills to consolidate New Orleans' courts prep for House, Senate floors*, NOLA.com (Apr. 7, 2026), t.ly/SW4Uo. Orleans Parish's bifurcated court structure is the only one of its kind in the State. *See* La. Legislative Auditor, *Clerks of Court*, t.ly/6wv3r. That unusual structure is a vestige of an earlier era when New Orleans was the State's dominant population center; today, Orleans is no longer even Louisiana's largest parish. *See* Informed Sources April 10th, 2026, WYES New Orleans, t.ly/1z40P, at 19:35–24:00.

Act 15—along with several other reform bills this session—thus fits a long-running legislative pattern of streamlining Orleans Parish's unusually fragmented court system. *See, e.g.*, SB645 of the 2006 Regular Session by Senator Willie Landry Mount, La. State Legislature, t.ly/44M8b (consolidating Orleans civil and criminal sheriffs); HB607 of the 2013 Regular Session by Representative Helena Moreno, La. State Legislature, t.ly/IU7DI (providing for the elimination of two Orleans juvenile court judgeships); HB600 of the 2016 Regular Session by Representative Walt Leger, III, La. State Legislature, t.ly/lznrE (combining Orleans traffic and municipal courts and eliminating a judgeship).

That backdrop notwithstanding, Plaintiff sued the Governor, Attorney General, and Secretary of State, ECF No. 1 (Compl.), and now seeks an emergency, mandatory TRO requiring them to install him in an office that Act 15 abolishes on Monday, ECF No. 2 (TRO.Mem.). The Court should deny that motion.

## ARGUMENT

### I.    Plaintiff Is Unlikely to Succeed.

Plaintiff is unlikely to succeed for two independent reasons. The Court lacks jurisdiction over this dispute, and, even if jurisdiction existed, Plaintiff's federal claims fail on the merits.

### A. The Court Lacks Subject Matter Jurisdiction.

The TRO motion fails at the threshold for three independent reasons: (1) sovereign immunity bars the claims against these State Defendants; (2) Plaintiff lacks standing; and (3) the requested TRO would violate *Pennhurst* by compelling compliance with Plaintiff's view of state law.

### 1.   Sovereign immunity bars this suit.

The claims against the Governor, Attorney General, and Secretary of State are all barred by sovereign immunity, and *Ex parte Young* does not apply. "To be a proper defendant under *Ex parte Young*, a state official 'must have some connection with the enforcement of' the law being challenged." *Alleman v. Harness*, 780 F. Supp. 3d 608, 630–31 (M.D. La. 2025) (quoting *Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024)). That is, "the state official must have a duty beyond 'the general duty to see that the laws of the state are implemented'" and, instead, "must have 'the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.'" *Id.* (quoting *Book People, Inc. v. Wong*, 91 F.4th 318, 335 (5th Cir. 2024)). Enforcement means "compulsion or constraint" because "if the official does not compel or constrain anyone to obey the challenged law, enjoining that official could not stop

any ongoing constitutional violation." *Id.* (citation omitted). Plaintiff cannot make that showing.

The Governor, Attorney General, and Secretary of State do not compel or constrain anyone with respect to Act 15's abolition of the Orleans Parish criminal clerk's office. *Cf. Bogan v. Scott-Harris*, 523 U.S. 44, 47, 54–55 (1998) (holding local officials absolutely immune for legislative acts abolishing city office). The Act does not mention the Attorney General at all. And its limited references to the Governor and Secretary of State concern recall elections, La. R.S. 18:1300.7(B), where Act 15 makes no substantive change to any official's role. The Act does not "authoriz[e]" any State Defendant to "cause the prosecution" of a violation or to "apply for an injunction." *Cf. Alleman*, 780 F. Supp. 3d at 632–33. It gives them no "specific authority to enforce the Act" or to "prosecute" violations of it. *Cf. Deep S. Today v. Murrill*, 779 F. Supp. 3d 782, 811 (M.D. La. 2025). It does not make them responsible for "adopt[ing] rules and regulations" or "implementing the rules." *Cf. Roake v. Brumley*, 756 F. Supp. 3d 93, 144 (M.D. La. 2024). And it gives them no particularized statutory authority to "direct[]" other officials in carrying out the Act's transition provisions. *Cf. Voice of the Experienced v. Ardoin*, No. CV 23-331-JWD-SDJ, 2024 WL 2142991, at \*18 (M.D. La. May 13, 2024).

Nowhere is this sovereign-immunity defect more evident than in Plaintiff's own prayer for relief. His Complaint and his TRO motion do not request any relief directed at any Defendant. *See* Compl.50 ("A. Assume jurisdiction over the claims in this matter. B. Issue an Order authorizing Plaintiff Calvin Duncan to assume the

5

Office of Orleans Criminal District Court Clerk at 12:00 a.m. on May 4, 2026. C. Enjoin SB 256, or in the alternative enjoin the First and Second Landry Amendments. D. Declare that the Landry Bill, including the Landry Amendments, violate[s] federal law; E. Award such further relief as the Court deems just and proper."); TRO.Mem.21 (seeking only the relief requested in B). That is because no Defendant has any enforcement authority regarding Act 15's abolition of the criminal clerk-of-court office, nor can any Defendant stop Act 15's operation of law. Because no Defendant enforces Act 15 (or could be enjoined from not enforcing Act 15), sovereign immunity plainly bars this suit.

### 2. Plaintiff lacks Article III standing.

That *Ex parte Young* defect points up an independent Article III standing problem. To satisfy Article III, a plaintiff must show (1) "an injury that is 'concrete, particularized, and actual or imminent'"; (2) that is "fairly traceable to the challenged action"; and (3) that is "redressable by a favorable ruling." *Attala Cnty., Miss. Branch of NAACP v. Evans*, 37 F.4th 1038, 1042 (5th Cir. 2022) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). Standing "is not dispensed in gross," which means that "'plaintiffs must demonstrate standing for each claim that they press' against each defendant, 'and for each form of relief that they seek.'" *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). Whatever Plaintiff's generalized voter injury, it is neither traceable to these State Defendants nor redressable by the relief he seeks.

"The second and third standing requirements—causation and redressability—are often 'flip sides of the same coin.'" *FDA v. All. for Hippocratic Med.*, 602 U.S. 367,

380 (2024) (citation omitted). That is because, "[i]f a defendant's action causes an injury, enjoining the action or awarding damages for the action will typically redress that injury." *Id.* at 381.

But that is Plaintiff's problem here: The State Defendants have nothing to do with the "enforcement" of Act 15, which is currently in effect and will consolidate the clerks' offices by operation of law come Monday. *Supra* Section I.A.1. The challenged restructuring flows from the Act itself, enacted by the Legislature under its exclusive lawmaking authority and signed by the Governor. *See Krielow v. La. Dep't of Agric. & Forestry*, 2013-1106 (La. 10/15/13), 125 So. 3d 384, 388. Plaintiff rightly does not seek some sort of injunction purporting to require the Legislature or the Governor to take back Act 15. *Cf. California v. Texas*, 593 U.S. 659, 673 (2021) ("And they do not claim that they might enjoin Congress."). Nor does he seek some sort of injunction against any Defendant, precisely because no Defendant has any role in Act 15's operation of law. That is a textbook traceability and redressability problem, as no order by this Court as to these State Defendants could redress any purported injury to Plaintiff.[2]

More, this Court cannot actually order the injunction Plaintiff seeks: an injunction "providing for his assumption of the Office of Orleans Parish Criminal District Court Clerk on May 4, 2026 at 12:00 a.m." TRO.Mem.21; *see* Compl.50 (asking the Court to issue "an Order authorizing Plaintiff Calvin Duncan to assume

---

[2] It bears noting, in addition, that the Attorney General and the Secretary of State plainly have no constitutional role in the bicameralism-and-presentment process that produced Act 15, which independently defeats any traceability argument as to those State Defendants.

the Office of Orleans Parish Criminal District Court Clerk at 12:00 a.m. on May 4, 2026" and to "[e]njoin SB 256").[3] For one thing, that office quite literally will not exist on Monday—and neither the State Defendants nor this Court can prevent that operation of law. An order providing for Plaintiff to assume a non-existent office, therefore, would accomplish nothing. For another, "a federal court exercising its equitable authority may enjoin named defendants from taking specified unlawful actions"—but "no court may 'lawfully enjoin the world at large,' or purport to enjoin challenged 'laws themselves.'" *Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021) (citations omitted). Yet Plaintiff does not hide that he is trying to enjoin Act 15 itself, which is foreclosed by cases like *Whole Woman's Health*. Both practically and legally, therefore, the Court cannot redress Plaintiff's asserted injury through the injunction he seeks.

### 3. *Pennhurst* independently forecloses a TRO.

The requested TRO independently runs headlong into the Supreme Court's command in *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124–25 (1984), that "federal courts lack[] jurisdiction to enjoin [] state institutions and state officials on the basis of [] state law." On Plaintiff's own telling, he demands relief that would bring Act 15 into compliance with state law. *E.g.*, TRO.Mem.10 ("Louisiana law requires that it be filled by election, not appointment."); TRO.Mem.13 ("Louisiana

---

[3] Notably, nothing about this particular remedy would redress Plaintiff's claimed injury to his "right to vote for the newly-constituted Clerk of Court position." TRO.Mem.19. Plaintiff, in fact, would prefer no election or voting at all. *See* TRO.Mem.15 (proposing that "Mr. Duncan (not Ms. Napoleon) … should take the newly-created seat"). Accordingly, Plaintiff also lacks standing to request a remedy so unrelated to his supposed injury.

law does not allow for this type of legislative maneuvering"). So even if Plaintiff were right about state law (he is not, *see infra*), the requested injunction thus necessarily "largely overlap[s]" with what state law requires. *Valentine v. Collier*, 956 F.3d 797, 802 (5th Cir. 2020). And "*Pennhurst* plainly prohibits such an injunction." *Id.*

### B. In All Events, the Claims Are Meritless.

Jurisdictional defects aside, Plaintiff is still unlikely to succeed on the merits. His purported *Anderson-Burdick* claim tries to convert a state-office restructuring into an election-law case, and his retaliation claim tries to attribute the Legislature's enactment of Act 15 to the alleged motives of separate state officials. Neither theory can support emergency relief.

#### 1. Plaintiff's *Anderson-Burdick* claim fails. (Count I)

Plaintiff's *Anderson-Burdick* theory will fail on its own terms. As best the State Defendants can tell, Plaintiff claims that Act 15 violates his right to vote in one of two ways: either by "overrid[ing] the outcome of a completed election," TRO.Mem.11, or by denying him a vote in a supposed vacancy election for the consolidated clerk office, TRO.Mem.13. Neither theory fits *Anderson-Burdick*, which applies to challenges to "a state election rule [that] directly restricts or otherwise burdens an individual's First Amendment rights." *See La Union del Pueblo Entero v. Abbott*, 167 F.4th 743, 760 (5th Cir. 2026). That is principally because Act 15 "does not control the mechanics of the electoral process." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 345 (1995); *see Mazo v. N.J. Sec'y of State*, 54 F.4th 124, 141–42 (3d Cir. 2022) (collecting examples of "mechanics of the electoral process"). It does not regulate ballot access, candidate qualifications, vote counting, election timing, or voter

9

eligibility. And nothing about *Anderson-Burdick* "mandate[s] that states organize their governments in a particular manner." *Moncier v. Haslam*, 570 F. App'x 553, 559 (6th Cir. 2014). Plaintiff thus "has no recognized right under the United States Constitution to run for"—or vote for—"an office that, under state law, already has been filled." *Id.*

Plaintiff's fallback reliance on *Duncan v. Poythress*, 657 F.2d 691 (5th Cir. Unit B 1981), fares no better. He invokes *Duncan* for the proposition that "the Fourteenth Amendment to the United States Constitution protects against the disenfranchisement of a state electorate in violation of state election law." *See* TRO.Mem.9–10. But *Duncan* cabined itself to "rare, but serious, violations of state election laws that undermine the basic fairness and integrity of the democratic system." 657 F.2d at 699.[4]

This case is nowhere near a cataclysmic breakdown of democracy. Abolishing a state office is a quintessential sovereign power of the State. *Newton v. Mahoning Cnty. Comm'rs*, 100 U.S. 548, 559 (1879) ("The legislative power of a State, except so far as restrained by its own constitution, is at all times absolute with respect to all offices within its reach."). That is why "public officers do not have a property interest in the positions they occupy." *Houchens v. Beshear*, 441 F. Supp. 3d 508, 517 (E.D. Ky. 2020) (citing *Taylor v. Beckham*, 178 U.S. 548 (1900)); *accord Hoag v. State ex rel. Kennedy*, 2001-1076 (La. App. 1 Cir. 11/20/02), 836 So. 2d 207, 220–21 (same under state law), *writ denied*, 2002-3199 (La. 3/28/03), 840 So. 2d 570. The Louisiana

---

[4] To the extent it constitutionalized state-law disputes over public office, it was abrogated by *Pennhurst*. *See supra* Section I.A.3.

Constitution, moreover, even expressly vests in the Legislature the power to abolish "clerks of the civil and criminal district courts" in Orleans Parish with a "change by law." *See* La. Const. art. V, § 32. Plaintiff's demand via *Duncan* to be seated in an office the Legislature has abolished is therefore a nonstarter.

Nor does the alternative theory—a claimed right to vote for a supposed new clerk-of-court vacancy—save his claim. *First*, Act 15 does not call a vacancy into being. It consolidates the authority, functions, duties, responsibilities, records, funds, and property of the criminal clerk's office into the civil clerk's office, whose holder is then referred to as the clerk of court for Orleans Parish. *Second*, even if Plaintiff could characterize that consolidation as creating a new office, Article V, § 32 forecloses his premise. Separate from other clerks of court statewide, the Orleans "clerks of the civil and criminal district courts" were "continued" in the 1974 Constitution only "subject to change by law," "notwithstanding any other contrary provision of this constitution," except as to their "terms of office." La. Const. art. V, § 32; *see, e.g.*, *Davenport v. Hardy*, 349 So. 2d 858, 862–63 (La. 1977) (recognizing the Legislature's exclusive power under Article V, § 32). Act 15 honors that narrow limitation by leaving the current criminal clerk's term untouched and abolishing the office only "before the term of any other criminal clerk of court begins." Plaintiff is just wrong that the Louisiana Constitution requires a new election every time the Legislature exercises its express authority to change Orleans Parish's clerk offices by law.

### 2. Plaintiff's First Amendment retaliation claim fails. (Count IV)

Plaintiff's First Amendment retaliation theory is also deeply flawed. To prevail, he must prove "the government took an 'adverse action' in response to his

11

speech that 'would not have been taken absent the retaliatory motive.'" *Hous. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 477 (2022) (citation omitted). But the Attorney General and Secretary of State took no substantive action at all with respect to Act 15, and the Governor merely signed the piece of legislation passed by the Legislature. *See id.* at 479 (holding that a public censure and reprimand was not a sufficiently "adverse action"); *see also Bogan*, 523 U.S. at 55. That is not enough—especially where the law at issue was enacted by a separate branch through bicameral passage.

Even setting aside the adverse-action problem, Plaintiff also cannot show but-for causation. Plaintiff ignores that Act 15 is part of a broader legislative effort to restructure Orleans Parish courts. Bruce, *supra* (discussing five different bills to revamp Orleans Parish courts). He cites zero evidence that the Governor and the Legislature somehow enacted any of Act 15's provisions in retaliation for Plaintiff's supposed protected speech. Indeed, his best innuendo (TRO.Mem.17–18) about the Legislature's effort to ensure that Act 15 took effect before he took office is completely baseless: As explained above, to comply with the constitutional protection for the clerks' terms of office, the Legislature *had* to do so. The Legislature's compliance with the Louisiana Constitution is not a First Amendment violation.

Finally, Plaintiff whiffs on a key part of the retaliation analysis: whether the supposed retaliation would chill a person of ordinary firmness from speaking. TRO.Mem.15–16. Setting aside that Plaintiff continues to engage in his preferred speech, his only argument on this score is that, "[i]f [he] is not allowed to take office as Clerk of the Criminal District Court, he will necessarily be barred from continuing

to engage in protected speech as a duly elected official." TRO.Mem.16. That is not a First Amendment claim; that is just a reprise of his due process claim, which fails for the reasons explained above. He will remain just as free on Monday as he is today to engage in whatever speech he wishes to express.

## II.    The Equities Favor the State.

The remaining factors add nothing to Plaintiff's motion. His irreparable-harm, equities, and public-interest arguments rise or fall with his merits theory that Act 15 violates the First and Fourteenth Amendments. TRO.Mem.18–21. Because that theory fails, those factors fail too. And the equities independently favor the State: Plaintiff seeks to upend a duly enacted statute. *See E.T. v. Paxton*, 19 F.4th 760, 770 (5th Cir. 2021) ("When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." (cleaned up)). He also seeks mandatory—and indeed, apparently unprecedented—relief that would install him in an office that Act 15 abolishes, disrupt the Legislature's transition plan, and leave Orleans Parish court administration in disarray. But "[m]andatory preliminary relief," like that, "goes well beyond simply maintaining the status quo" and "is particularly disfavored." *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976); *accord Roark v. Individuals of Fed. Bureau of Prisons, Former & Current*, 558 F. App'x 471, 472 (5th Cir. 2014) (per curiam); *ExxonMobil Pipeline Co. v. Landry*, No. CV 15-824-JWD-EWD, 2016 WL 320153, at *3 (M.D. La. Jan. 26, 2016) (citation omitted). The equities favor denying emergency relief.

13

## CONCLUSION

The Court should deny the motion.


Dated: May 1, 2026

Respectfully submitted,

ELIZABETH B. MURRILL
Attorney General of Louisiana

 */s/ Zachary Faircloth*
ZACHARY FAIRCLOTH (LA 39875)
  Principal Deputy Solicitor General
OFFICE OF THE LOUISIANA ATTORNEY
GENERAL
1885 North Third Street
Baton Rouge, LA 70802
Telephone:  (225) 421-4088
Facsimile:   (225) 326-6795
FairclothZ@ag.louisiana.gov

*Counsel for Defendants*

14