**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| CALVIN DUNCAN, | |
| *Plaintiff,* | Case No. 3:26-cv-460 |
| v. | Judge John W. deGravelles |
| JEFFREY LANDRY, *et al.*, | Magistrate Judge Scott D. Johnson |
| *Defendants.* | |

### REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

Defendants' opposition avoids the key issue—whether filling a newly-created office by unauthorized legislative appointment violates Plaintiff's federal constitutional rights. It does. And their arguments about *Ex parte Young*, standing, and *Pennhurst* flounder because Defendants' actions are directly tethered to (a) the illegal execution of the Second Landry Amendment (the provision of a commission to an elected office absent an election); and (b) improper motives (the silencing of Plaintiff's speech as an elected officer). As to their merits' arguments, they too favor Plaintiff. In fact, Defendants readily admit that the term of the criminal district court clerk cannot be cut short post-election, but conveniently avoid recognizing case law that tethers term limits of electeds to the date of their election, not their assumption of office date. Against this backdrop, granting Plaintiff's TRO request stands to prevent irreparable constitutional harm that further motion practice on a workable timetable can more readily and definitively resolve.

### I.     Defendants Err in Arguing *Ex parte Young* Applies to Plaintiff's Claims.

Defendants assert that sovereign immunity ("SI") bars Plaintiff's effective right to vote and First Amendment ("1A") retaliation claims. Opp. at 4-6. But the cases on which Defendants rely, including those that concern legislative immunity, are inapt. *See e.g.*, *Bogan v. Scott-Harris*, 523 U.S. 44, 48 (1998) (holding legislators are immune for legislative acts); *Krielow v. Louisiana Dep't*

1

*of Agric. & Forestry*, 2013-1106 (La. 10/15/13), 125 So. 3d 384, 388 (same) (cited in Opp. at 5).[1] Where, as here, a plaintiff seeks to bar actions by state officials with a direct connection to the enforcement of an unconstitutional law or portion thereof, *Ex parte Young* applies against the "state officials acting in violation of federal law." *Deep S.,* 779 F. Supp. 3d at 809.[2]

**_Right to Vote Claim_.** Here, both the Governor and Secretary of State are required to take actions for Chelsey Napoleon to sit as the new Clerk. Thus, each has a direct connection to enforcing the unconstitutional portion of Act 15 being challenged—here, the Second Landry Amendment (the "SLA"), which installs Ms. Napoleon into the new seat absent a legally-required election. TRO Br. at 11. Defendants Landry and Landry are both together and separately implicated in Act 15's enforcement. *First*, under Louisiana law, elected officials receive a commission issued by the Secretary and signed by the Governor. La R.S. 18:513(A)(5) (providing that secretary "shall" certify an elected's election to the governor, who "shall issue a commission"). Thus, Ms. Napoleon's Civil District Court commission, signed by Defendants Landry and Landry, is either the operative document that permits her to take over the new seat, or Defendants will provide her with a new commission by virtue of that new title. Either way, Defendants have "some connection with the enforcement of the act in question . . . ." *Book People*, 91 F.4th at 335 (finding

---

[1] *See Alleman v. Harness*, 780 F. Supp. 3d 608, 633 (M.D. La. 2025) (denying sovereign immunity for state board of examiners based on "particular duty to act" and "sufficient connection to enforcement" in 1A challenge to licensure law); *Mi Familia Vota v. Ogg,* 105 F.4th 313, 333 (5th Cir. 2024) (granting SI for AG due to a showing of only "general" authority and lack of specific role); *Book People, Inc. v. Wong,* 91 F.4th 318, 336 (5th Cir. 2024) (denying SI for education commissioner who had "sufficient connection to the statute's enforcement" in 1A challenge to content-warning requirement); *Deep S. Today v. Murrill*, 779 F. Supp. 3d 782, 811 (M.D. La. 2025) (denying SI for AG and Louisiana State Police Superintendent in 1A challenge by journalists to policing buffer zone); *Voice of the Experienced v. Ardoin*, No. CV 23-331-JWD-SDJ, 2024 WL 2142991, at *18 (M.D. La. May 13, 2024) (similar, for secretary of state in challenge to Election Code provisions under Equal Protection clause).

[2] *Texas Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) (denying SI to Secretary of State in challenge to absentee-voting provisions because of the secretary's responsibility to design, provide, and furnish the required forms); *Okpalobi v. Foster*, 244 F.3d 405, 414–15 (5th Cir. 2001) (holding plaintiff must demonstrate defendant has "some connection with the enforcement of the act in question or [is] specially charged with the duty to enforce the statute and [is] threatening to exercise that duty." (en banc) (plurality op.) (cleaned up); *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019) (explaining "scintilla of 'enforcement' by the relevant state official with respect to the challenged law" will do).

*Ex parte Young* exception applied where state actor "ultimately responsible" for complained of speech violation even though actual enforcement mechanisms performed by other local officials).

*Second*, Governor Landry is directly implicated in enforcement of the Act because it was his signature (yesterday) that made SB 256 law (Act 15). It is also not true that the Act only references the Governor in the context of recall elections. Opp. at 5. Indeed, as reported by the media, the Act made the Governor the decisive authority over the date of the Bill's enactment.[3] Act 15, by its terms, placed the authority to nullify the 2025 election in the Governor's hands. Compl. at ¶7 (explaining how amendments added to expedite law's effective date); *id. a*t ¶ 3 ( "Not only am I going to sign it, I'm going to absolutely support it and make sure it's passed."). Without his signature on a date prior to Plaintiff's elected term, the law would otherwise go into effect *after* the date of Plaintiff's commission (the subject of the TRO at issue). La. Const. Art. III § 18 (explaining that a passed, but unsigned, bill becomes law on August 1).

There is no way to distance the Governor from the exercise of a "scintilla of 'enforcement' with respect to the challenged law," here, specifically, the SLA. *Abbott,* 978 F.3d at 180 (denying sovereign immunity in voting rights challenge to absentee ballot procedures for Secretary of State due to "specific and relevant" responsibilities governing absentee ballot form); *Book People, Inc*. 91 F.4th at 335 (explaining that sovereign immunity turns on ability to compel or constrain a person unlawfully). The Governor clearly "demonstrated a willingness to exercise [his] duty" to enforce the statute when he signed it and made it law. *Alleman*, 780 F. Supp.3d at 630–31. That signature was the nail in the criminal district court clerk's coffin. Staying the Landry Amendments (the "Amendments") would allow Plaintiff to take his elected seat on Monday (the only relief he

---

[3] *See, e.g.,* Matt Bruce, *Bill to merge New Orleans court clerks clears legislature, awaits Jeff Landry's signature,* Times-Picayune (Apr. 29, 2026), https://www.nola.com/news/politics/bill-to-merge-new-orleans-court-clerks-clears-legislature-awaits-jeff-landrys-signature/article_664afded-1041-4e46-9789-ddd8b8b66bfd.html.

seeks in his TRO). It defies reason to suggest the Governor's signature triggers the law to somehow start, yet simultaneously claim that he had no ability to "stop" it. Opp. at 5. He had the authority to stop it from going into effect and instead chose to sign it forthwith. Exh. A. Sovereign immunity does not shield the Governor from suit.

*Third*, the Secretary is implicated in the unlawful enforcement of Act 15 because her role is tied to ensuring (1) elections are not wrongly nullified, and (2) elections required by the Louisiana Constitution are held. *See* TRO Br. at 8–15, Ex. A-2 (ECF No. 2-3); La. R.S. 18:18 (she is departmental head responsible for conduct of Louisiana elections, and is responsible for public officials' oaths of office in accordance with La. R.S. 42:162). She may not fail to uphold her duties in administering and issuing commissions for newly elected offices. *See* La. R.S. 18:602 (duties of secretary in event of vacancy). Hence, sovereign immunity does not bar a claim against her.

*1A Retaliation Claim.* The Governor and Attorney General (the "AG") are not immune from suit because Plaintiff alleges a retaliation campaign by them and against him for his speech. *See Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (holding unconstitutional "adverse governmental action against an individual in retaliation for the exercise of protected speech activities"); TRO Br. at 15. The retaliatory chain began with and is directly tied to Defendant Murrill's threats. Compl. ¶¶ 57–65. It continued through the Governor's championing of Act 15 to punish Plaintiff, Compl. at ¶¶ 68–80, including through the SLA, which was designed to abolish his office, Compl. ¶ 94.[4] Because *Ex parte Young* does not bar suits for violations of federal law (and this retaliation violates 1A), Plaintiff's claim is not barred.

---

[4] Defendants allege a broader legislative effort is the true motivating factor of Act 15. But the differences in these bills belie this narrative. For example, S.B. 217 becomes effective on August 1, 2026, and reduces judgeship in 2027. S.B. 197 reduces state appellate judges, but likewise protects against the remainder of terms. H.B. 911 modifies the organization of the criminal and juvenile courts but likewise prevents against position elimination and/or vacancies. Act 15 has none of these protections.

**II.    Defendants' Traceability and Redressability Arguments Fail.**

Defendants also wrongly assert that Plaintiff lacks standing to bring his claims because his injury is not traceable to Defendants' actions and the redress he seeks does not rectify it. Opp. at 6-8.[5] Because Plaintiff satisfies *Ex parte Young, see supra* Sec. I, he also satisfies Article III standing. *See Book People*, 91 F.4th at 334–36; *Deep S. Today*, 779 F. Supp. 3d at 809.

*Traceability* requires showing a "causal connection between the injury and the conduct complained of." *Book People, Inc.,* 91 F.4th at 332. Here, Plaintiff's injury (as a voter and as Clerk-Elect) is premised on how the criminal court clerk's office is being abolished (Count I) and why (Count IV). TRO Br. at 8–18. His injury stems directly from the Amendments, which unlawfully nullify a prior election and avoid a legally required future one, all in an attempt to unlawfully appoint Ms. Napoleon to an elected office that she did not run for. Compl. ¶¶ 138. The Amendments do not comport with case law that (a) prevents retroactive alteration of the outcome of a completed election; or (b) requires a new and vacant seat to be filled by election. *See* TRO Br. at 15, Exh. A-2 (ECF No. 2-3) (citing case law). Staying the effects of the Amendments would directly redress the injury that Plaintiff focuses on in his TRO—specifically, his inability to take office on Monday in accordance with the electorate's expectations set on November 15, 2025. *See* TRO Br. at 14 (citing cases). His requested relief would bar the unconstitutional and immediate abolition of his office, demonstrating that the injury of which he complains is traceable to Defendants, who by virtue of their role in issuing commissions validate and seat elected officials.

---

[5]  Defendants cite a litany of cases that do not address the facts at bar and, instead, stand for general standing principles not in dispute. *See, e.g.*, *Attala Cnty., Mississippi Branch of NAACP v. Evans,* 37 F.4th 1038, 1043 (5th Cir. 2022) (finding no standing because plaintiffs did not demonstrate a likelihood of racial discrimination in jury service was likely to happen to them, individually); *California v. Texas*, 593 U.S. 659, 673 (2021) (denying standing where statutory provision had no mechanism of enforcement; that is, where there was no forthcoming injury). Defendants' passing reference to *Whole Woman's Health v. Jackson* is inapt. 595 U.S. 30, 44 (2021) (concerning Texas law creating a private right of action against people who performed or facilitated abortions, and sought injunctive relief against it, where Court held it could not possibly enjoin "any and all" unnamed parties who may bring suit).

5

*Redressability* requires a plaintiff to show that a "favorable decision will relieve a discrete injury to [himself]." *Id.* Relief here, under either Counts I or IV, would mean that Defendants would be prevented from issuing a commission to Ms. Napoleon as the de facto, newly-created Orleans Parish clerk. Compl. ¶ 190. It would thereby give meaning to Plaintiff's 2025 vote, remove the chilling effects of the Act, and prevent Defendants from somersaulting over the 1st and 14th Amendments by avoiding a legally required election. TRO Br. at 11. Federal law is clear that plaintiffs have standing to challenge unconstitutional state law provisions against appropriate actors. *See, e.g., Grosjean v. Am. Press Co.*, 297 U.S. 233, 251 (1936) (1A challenge to tax on publishers); *Duncan v. Poythress*, 657 F.2d 691, 703–05 (5th Cir. 1981) (14A challenge to state election law brought against Governor and Secretary of State who sought to appoint justice despite required special election).

III.    **Defendants Misread and Misapply *Pennhurst*.**

Defendants suggest *Pennhurst* alone bars any further consideration of a TRO. Opp. at 9. Not so. *See Am. Bank & Tr. Co. of Opelousas v. Dent*, 982 F.2d 917, 921 (5th Cir. 1993) (noting Defendant cannot "escape the reach of *Young*" where, under the exception, "state law that is *challenged* as unconstitutional . . . does not mean that [Plaintiff's] cause of action arises under state law" or seeks injunctive relief on the basis of state law). *Ex Parte Young* directly provides a carve out for suits like Plaintiff's that challenge the constitutionality of state law, which *Pennhurst* explicitly recognizes. 465 U.S. at 102.[6] Here, Plaintiff seeks only to preserve his rights under the 1st and 14th Amendments with a narrow stay of the Landry Bill's violative effects—without which

---

[6] That constitutional compliance runs through state action is of no mind where a plaintiff—as here—has "plausibly pled claims rooted in federal law." *Planned Parenthood Gulf Coast, Inc. v. Gee*, 2018 WL 11472388, at *14 (M.D. La. 2018); *see also id.* ("The claims may implicate state law, but the Court cannot conclude at this time that granting relief in this action will run afoul of *Pennhurst* or related cases" because plaintiffs plausibly pled claims rooted in federal law); *cf.* Defendants' citation to *Valentine v. Collier*, 956 F.3d 797, 802 (5th Cir. 2020) (distinguishable where district court issued an injunction that, *by its own admission*, overlapped with a state department's policy (and ultimately went beyond the scope) to promote compliance, which is not at issue in the present case).

he will suffer irreparable harm. TRO Br. at 4. That Plaintiff's request would allow him to assume the office to which he was elected for the duration of the injunction is a byproduct of what state law *actually* requires: an election for the newly created seat via Act 15. *Pennhurst* is inapplicable because Plaintiff's claim arises under the U.S. Constitution, not state law.

## IV.    Anderson-Burdick Applies as Landry Amendments Nullify and Avoid an Election.

Defendants argue that *Anderson-Burdick* is inapt. Opp. at 9. They claim the test is limited to "challenges to 'a state election rule that directly restricts or otherwise burdens an individual's [1A] rights." *Id.* (citation omitted). But failure to follow a state election rule is at issue here, where Act 15, through the Amendments, aims to control the "mechanics of the electoral process." Opp. at 9. Nullifying an election, while also failing to call another as required by law, is quintessential regulation of "ballot access" because access to the ballot is being denied outright, both by virtue of nullification and in failing to call a required election. *Id.* Moreover, "candidate qualifications" are being erased due to the complete lack of a qualification round for a required upcoming election. *Id.* As for "vote counting," it is being wholly abandoned through the nullification of nearly 40,000 votes and the failure to count votes concerning the required new election. *Id.* Regarding "election timing," that too is being eroded because no election is being called for the new seat. *Id.* Finally, as for voter eligibility, that has been wholesale thrown out because voters are being cheated out of the new election with no recourse as to the nullification of their votes in the prior election. *Id.*

Separately, Defendants' reliance on *Moncier v. Haslam*, for the rule that the Constitution does not "mandate that states organize their governments in a particular manner," is inapt. 570 F. App'x 553, 559 (6th Cir. 2014). There, the legislature reorganized an office the state constitution did not require be filled by popular election, leaving the appointment mechanism constitutionally

permissible, whereas here Louisiana's Constitution expressly mandates that "[i]n each parish a clerk of the district court shall be elected for a term of four years." *Id*; La. Const. Art. V § 28(A). Similarly, Defendants' reference to *Newton v. Mahoning Cnty. Comm'rs,* 100 U.S. 548, 559 (1879), fails. That case does not stand for the rule that legislative power to abolish state offices "is at all times absolute." *Id.* Rather, *Newton* carves out the constraint at issue here, recognizing that legislative power over offices operates only "except so far as restrained by its own constitution." The power to abolish an office and the power to fill it with a successor are constitutionally separate acts. Here, Louisiana's Constitution restrains the latter by requiring an election. La. Const. Art. V § 28(A). The SLA is unconstitutional because rather than carving out space for a legally-required election to fill the newly seat, it decides who occupies it.[7] Pl. TRO Br. at 2 n.2.

In fact, *Duncan,* 657 F.2d 691, prohibits this outcome. *Id.* at 700, 704 (holding that "it is fundamentally unfair and constitutionally impermissible for public officials to disenfranchise voters in violation of state law so that they may fill the seats of government through the power of appointment," and deliberate, intentional action that erodes democratic process crosses constitutional threshold regardless of whether underlying legislative act was facially authorized). Defendants' argument that the seat is a mere consolidation and not a new office does not save them, because that proposition runs headlong into precedent that suggests the opposite. *See, e.g.*, *Calogero v. State ex rel. Treen*, 445 So. 2d 736, 738 (La. 1984) (elections "must be for a specific office with a specific term and specific powers," as defined at the time of election).[8]

---

[7] The SLA attempts to "transfer the authority, functions, and duties of the criminal clerk's office to the civil clerk, 'who shall thereafter be referred to as the clerk of court for the parish of Orleans,' without requiring any election." *Id.* That is not restructuring; that is an appointment to a new office by another name. *Id.* at 13 (citing *State ex rel. Sanchez v. Dixon*, 4 So. 2d 591, 595 (La. Ct. App. 1941); *Russell v. McKeithen*, 257 La. 225, 244 (1970).

[8] *Campbell v. Zayo Group, L.L.C.*, 656 Fed. Appx. 711 (5th Cir. 2016) (plaintiff showed age discrimination where terminated after job was consolidated with colleague's, both were considered incumbents, the consolidated job was "new" with new responsibilities, and defendant described elimination of plaintiff's original job "as a done deal," but broader staff consolidation and reorganization were future events).

8

Finally, Defendants' argument that the term of the criminal district clerk cannot be cut short, Opp. 11, supports Plaintiff's argument, not theirs. Plaintiff's term was set on November 15, 2025, by virtue of a completed election for the office for which he ran. It cannot be retroactively changed because the legislature aims to eliminate the term prior to commencement. *See* TRO Br. at 14 (citing cases). In sum, because Defendants fail to offer any legitimate state interest that would justify nullifying a completed election and bypassing constitutionally required electoral processes, Plaintiff is likely to succeed on his voting rights claim.

## V.    Defendants Fail to Engage with Plaintiff's 1A Retaliation Allegations.

For starters, Plaintiff's 1A claim is not brought against Defendant Nancy Landry; it is brought solely against the Governor and AG. Compl. ¶¶ 226-235. As to these Defendants, myriad "substantive actions," Opp. at 12, are raised as to their retaliation against Plaintiff for his speech.[9] What Defendants frame as simply "comply[ing] with the constitutional protection for the clerks' terms of office" (Opp. at 12) is belied by the sequence of events alleged in the Complaint and the quashed constitutional rights of voters, including Plaintiff. As to "but-for causation," Opp. at 12, Defendants' actions are allegedly the very reason for passage of the Amendments, Compl. ¶¶ 80, 94, for which no counterparts exist in the other two laws that ostensibly form part of the Governor's package to align Orleans with the other parishes. *See* n.4, *supra.* Defendants also wrongly claim that Plaintiff's speech is unaffected by the Amendments. Indeed, barring an elected from his position by virtue of his messaging in a way that the messages brought on behalf of his constituents are silenced amounts to classic 1A retaliation. *See Bond v. Floyd*, 385 U.S. 116, 136 (1966)

---

[9] *See, e.g.,* Compl. ¶¶ 59, 65 (AG's threat regarding speech); *Id.* ¶ *58* (relationship between AG and Governor); *Id.* ¶ 68 (Act 15 brought at Governor's behest); *Id.* ¶ 70 (Act 15 tethered directly to Governor's priorities); ¶¶ 75-76 (First Landry Amendment, brought at Governor's behest to ensure Plaintiff never takes office is adverse action tethered to retaliatory motive of silencing Plaintiff for his speech on the campaign trail); *id.* ¶ 94 (SLA brought at Governor's behest so no scintilla of doubt in successor to Orleans Clerk of Court seat and that successor would be placed in permanently without an election); *see also* TRO Br. at 16 (explaining why plaintiff satisfies 1A retaliation standard identified in *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)).

(finding refusal to seat state legislator for protected speech violated 1A and implicated interests of the legislator's constituents); *Hous. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 477 (2022) (explaining *Bond* and its import). On May 4, if Defendants have it their way, the clerk of criminal district court will not exist because of his speech on the campaign trail, and Plaintiff's voice as an elected official will have been successfully quashed. TRO Br. at 16 (applying *Bond*).

## VI.    The Equities Militate in Plaintiff's (not Defendants') Favor.

Defendants claim the equities favor the State because Plaintiff aims "to upend" Act 15. Opp. at 13. But Defendants miss the mark in failing to acknowledge that an Act (or portion thereof) that violates the Constitution does not favor enforcement. TRO Br. at 20 (citing cases). The transition plan outlined in Act 15 is unconstitutional because legislative appointment to an elected office violates the 1st and 14th Amendments. TRO Br. at 8–18. So while Plaintiff is not arguing here that Act 15 may not create a new position, he is arguing that, in doing so, it cannot bypass an election. *Id*. at 1. Saving an act from an internal inconsistency is not unprecedented.[10] Opp. at 13. And, for the same reason, Defendants cannot truncate Mr. Lombard's term, they cannot do so to Plaintiff's. TRO Br. at 11. The status quo, until yesterday, was that Plaintiff would take the office to which he was duly elected by Orleans voters last year. It is thus not he who intends to upset the status quo; it is the Defendants. The equities accordingly favor granting the TRO.

---

[10] *Barr v. Am. Ass'n of Political Consultants, Inc.*, 591 U.S. 610, 626 (2020) ("The Court's power and preference to partially invalidate a statute in that fashion has been firmly established since *Marbury* v. *Madison*."); *see also Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 332 (2006) (holding either an injunction prohibiting unconstitutional applications or a holding that consistency with legislative intent requires invalidating statute *in toto* was an appropriate remedy where law could be applied in manner that violated constitutional rights).

Dated: May 2, 2026

Respectfully submitted,

*/s/ Malcolm Lloyd*
Malcolm Lloyd, La. Bar No. 41573
Sarah Whittington, La. Bar No. 36725
*Nora Ahmed, NY Bar No. 5092374
Andrew Perry, La. Bar No. 40906
Ashley Fox, La. Bar No. 41748
ACLU Foundation of Louisiana
1340 Poydras St., Ste. 2160
New Orleans, LA 70112
Tel: (504) 522-0628
swhittington@laaclu.org
nahmed@laaclu.org
mlloyd@laaclu.org
aperry@laaclu.org
afox@laaclu.org

William P. Quigley, La. Bar No. 07769
Professor Emeritus of Law
Loyola University College of Law
7214 St. Charles Avenue
New Orleans, LA 70118
Tel: (504) 710-3074
Fax: (504) 861-5440
quigley77@gmail.com

Ronald L. Wilson, La. Bar No. 13575
Attorney at Law
701 Poydras Street, Suite 4100
New Orleans, LA  70139
Tel: (504) 525-4361
Fax: (504) 525-4380
cabral2@aol.com

*Adina Marx-Arpadi
*Kayla Vinson
Center for Constitutional Rights
666 Broadway, 7 Fl.
New York, NY 10012
Tel: (212) 614-6464
amarxarpadi@ccrjustice.org
kvinson@ccrjustice.org

*Attorneys for Plaintiff*
*Admitted *pro hac vice*

11

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2026, I electronically filed the foregoing Reply with the Clerk of the Court by using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Malcolm Lloyd*
Attorney for Plaintiff
