# EXHIBIT D-1

**DECLARATION OF LILY MARKUS**

I, Lily Markus, declare under penalty of perjury under the laws of the United States of America:

1. I am over the age of 18 and competent to testify to the facts and matters set forth herein.

2. I am interning as a paralegal with the American Civil Liberties Union Foundation of Louisiana, and my office address is 1340 Poydras St., Suite 2160, New Orleans, LA 70112. As of the date of this Declaration, I am working from New Orleans, Louisiana.

3. On April 13, 2026, I downloaded the audio/visual file titled *LA Senate On-Demand Video* to prepare **Exhibit D-1**. The video is publicly available as of April 13, 20256, at the following URL:

https://senate.la.gov/s_video/VideoArchivePlayer?v=senate/2026/04/0408_26_26RS_Day14

4. Over the course of the next few days, I used Adobe Premier to transcribe the audio/visual file and manually editing the text for accuracy to the best of my ability. That unofficial transcription is appended hereto.

I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed in New Orleans, Louisiana, on April 15, 2026.



Lily Markus

**Unofficial Transcript of Senate Judiciary A Hearing Video Recording on April 8, 2026**

***LA Senate On-Demand Video***

**Platform:**
**https://senate.la.gov/s_video/VideoArchivePlayer?v=senate/2026/04/0408_26_26RS_Day14**

**Last Accessed: April 15, 2026**

**(Begin Transcript)**

*01:16:17:03* — **Sec. Dixon**: Senator Morris, now call. Senate Bill 256 by Senator Morris is an act to amend title 13 relative to the Clerk of Court in Orleans Parish, to provide for one clerk of the Civil District Court and the Criminal District Court. Senator Morris sums up technical amendments made at the suggestion of a Legislative Bureau note and moves adoption of those amendments.

**Pres. Henry**: Without objection. Senator Morris.

*01:16:45:19* — **Sen. Morris**: Thank you, Mr. President. Members, this is the bill to consolidate the Orleans Parish District Civil district court clerk with the criminal district court clerk. As I think most of you know by now, Orleans Parish is the only parish in the state that has two clerks of court. Everybody else has one. The clerk over there, the civil clerk, collects a lot of fees and pays for her own office out of the civil filings.

*01:17:18:09* — **Sen. Morris**: When you record a mortgage, your record of, a deed, you file a lawsuit, etc., and, but in the criminal clerk's office, they don't have those kinds of fees that are charged. And so, they are reliant upon, the city of New Orleans, primarily to assist in funding their office. Everywhere else in the state, the civil filings help pay for the criminal clerks. And so, that is what the bill does. I do have a couple of amendments. Mr. President…

*01:17:55:22* — **Sec. Dixon**: First amendment is set up by Senator Duplessis. They are sat number 17.

*01:18:33:25* — **Sen. Morris**: I'm done with amendments, Mr. President.

01:18:36:16 — **Pres. Henry**: Okay. Next set of amendments.

*01:18:37:26* — **Sec. Dixon**: Amendments by Senator Duplessis. They are set, number 1741 1741.

*01:18:47:04* — **Sec. Dixon**: [...] And the set offered now is set 1866, 1866.

*01:19:28:03* — **Sen. Duplessis**: Thank you, Mr. President. Members, I'm offering this amendment at the request of the newly elected Clerk of Criminal District Court, Mr. Calvin Duncan. The amendment is very simple. We know that an amendment was adopted yesterday on the bill that would make it take effect immediately. This amendment would give Mr. Duncan the opportunity to serve at least one term, making the act effective on May 4th, 2030. I'm filing this and bringing this at his request. I think it's the right thing to do, especially given the people of New Orleans just voted for Mr. Duncan. So essentially, what this amendment would do would make this bill take effect in 2030. I also think it's a good amendment because it would give the clerk's offices more time for transition. And that's what the amendment does.

*01:20:20:20* — **Pres. Henry**: Okay. I see no questions on the amendment. Are there any objections on the adoption amendment? Senator Morris, on your objection.

*01:20:26:21* — **Sen Morris**: Thank you, Mr. President. Members, it's important to to move this bill forward. It's not going to do any good. We don't need to study it anymore and extend it on. I respect what Mr. Duncan has been able to accomplish considering his history. And it's nothing against him personally. But this, I believe that this bill really needs to move. So, I ask you to, that you oppose this amendment.

*01:20:54:10* — **Pres. Henry**: Okay, Senator, to just to close on your amendment.

*01:20:56:17* — **Sen. Duplessis**: All right. Thank you, Mr. President. I just want to clarify. This is not calling for a study. This is not calling for a delay other than the effective date. So, the bill would still move forward, as I know you all have the votes to pass the bill, but this is not asking for a study. It's just asking for delay in effective date. Thank you.

*01:21:20:16* — **Pres. Henry**: Okay, Senator Duplessis offered amendment to what Senator Morris has objected. All those in favor of the amendment will vote yes. All those opposed to the amendment will vote no. Madam Secretary, open the machines. Vote your machines members, vote your machines.

Madam Secretary, close the machines. 11 yeas and 23 nays amendment fails to pass next amendment.

*01:21:49:14* — **Sec. Dixon**: Senator Duplessis sends up set number 1863 1863

**Pres. Henry**: On the amendments.

*01:22:00:12* — **Sen. Duplessis**: Thank you, Mr. President. I am offering this amendment at the request of the Clerk of Civil District Court, Chelsea Napoleon. The current

bill, as she explained it to me, and as I understand, she explained to Senator Morris, creates several challenges, several challenges that I won't lay out in this amendment. But what we're trying to do with this amendment is, is essentially protect her ability to keep doing her job effectively. And the funding structure that is proposed in this bill will change it from a 5050 split to a 6040 split. This amendment keeps it at 5050, so she can continue to effectively do her job. It also. In the spirit of which Senator Morris has suggested, this bill is being offered to try to put us in line with other with other parishes throughout the state. The the dollars should be paid from the clerk's salary fund. Under the current version of the bill and doesn't do that. So, we want to keep it in line with the rest of the state and how they do how they do it. And as, as as it was explained by, by the clerk of Civil district court, it's unrealistic to reduce the funding of the office while adding more responsibility. That that's what we're doing. We're reducing her funding and adding more responsibility. So, this bill attempts to try to effectively, let her do her job by keeping the funding where it currently is. And I'm bringing it at her request. Thank you.

*01:23:37:24* — **Pres. Henry**: Okay, Senator Duplessis offered amendment. Is there any objection, Senator Morris, on your objection?

*01:23:45:22* — **Sen. Morris**: Thank you, Mr. President. Members, this bill is to provide some efficiencies and to illustrate why this amendment and good in addition to some language in that it puts the state general fund at risk if there's not enough, money that she has. In addition, the the total clerk's office consolidated, is still going to have way less work than East Baton Rouge Parish, for example. I think that's a pretty good, metric to go by. For example, in East Baton Rouge Parish, which handles civil matters, criminal matters and traffic matters. And remember, even this consolidated clerk still won't handle traffic matters that goes through the traffic courts, that they handle. They have 17,452, civil cases filed every year or in 2025. And that's roughly on par.

They have 6324 criminal cases filed. They have 15,149 traffic matters, for a total of 38,925 matters. The Orleans Parish criminal clerk has 3900 criminal matters, compared to 6324 in East Baton Rouge. The total number of civil cases filed is 11,806, compared to 17,452, and in East Baton Rouge Parish. So, the total in Orleans is 12,013 matters.

East Baton Rouge is 38,925 matters. Yet, the budget of of East Baton Rouge is is only about a million, $1.7 million higher than New Orleans, despite the overwhelming additional work. And it's a bigger parish. In addition, the the clerk in Orleans, a civil district clerk in Orleans Parish, is is paying out $2 million a year for lease payments for stor- what appear to be storage buildings, that there are efficiencies that can be occurred. And for that reason, I think that this amendment should be rejected. And I urge you to vote.

*01:26:31:19* — **Pres. Henry:** Senator Duplessis to close on your amendment.

*01:26:37:02* — **Sen. Duplessis**: Okay. Our current clerk of civil district court is one of the most effective leaders that we have in the state. She's incredibly good at her job. She's incredibly efficient at her job. She's been at that office for well over a decade now. And she was also, overwhelmingly reelected. In fact, she didn't even have opposition. I'm not in a position, nor do I think is Senator Morris in a position to say what she can do with the money we give her better than she can, because she has already proven to be an incredible steward of of her position. So, I trust her. That's why I brought this amendment. And I'm concerned that if we continue down this path, we're going to make it more difficult for her to do the job.

Additionally, this, this, this bill in its current posture, it gives the court the power to remove people from the clerk's office. And I don't know if that is an unintended consequence or that that Senator Morris isn't aware of or if, if that is an intention of the bill. But that's something that she also raised. I don't know of any courts that can remove clerk office employees that with that's what this bill would do, and she's asking us to not put her in that position.

So, with that, I ask for your for your vote on this amendment.

*01:27:54:10* — **Pres. Henry**: Okay. Senator Duplessis offered an amendment to which Senator Morris has objected. All those in favor of the amendment will vote yes. All those opposed, no. open the machine, vote your machines members, vote your machines.

Madam Secretary, close the machine 12 years and 24 nays. Amendment fails to pass. Next set of amendments.

*01:28:14:01* — **Sec. Dixon:** No further amendments.

*01:28:16:07* — **Pres. Henry:** Senator Morris, on your bill.

*01:28:22:19* — **Sen. Morris:** Members, I think this bill is, important to move forward to combine these offices like everybody, everywhere else in the state, we're combining the judicial expense fund, it’s going to allow, there to be one clerk and one judicial expense fund that will help pay for the criminal courts of the state of Louisiana won't have to pay as much. And the city of New Orleans, will ultimately save some money as well. So, I ask for your favorable passage.

*01:28:54:05* — **Pres. Henry:** Senator Morris. Question on the bill. Senator, Duplessis.

*01:29:01:26* — **Sen. Duplessis**: Senator Morris, I do have some some questions for you

on this bill.

*01:29:05:25* — **Sen Morris:** All right, all right.

*01:29:08:28* — **Sen. Duplessis:** I want to start my questions by Pointing out that The Difference in criminal court not receiving any funding from civil filings is an outlier in the state, and it is something that we should address. And it is something that I personally and I know that my colleagues from Orleans Parish would like to see addressed. So that criminal District Court does not have to rely as much or as much on any funding from the state. So, I want to point that out as being a legitimate issue that we could work together to try to address. But let's start with some of the substance of this bill and what it's aiming to do. And I really want to understand some of the foundation. So, I'd like to begin by asking whether or not there was any national study that was commissioned by this legislature that led you to put this bill in the posture that it's in. Was there any national study?

*01:30:11:07* — **Sen. Morris:** No.

*01:30:12:02* — **Sen. Duplessis:** Okay. Was there any Supreme Court study or Supreme Court recommendation that led you to draft this bill?

*01:30:21:11* — **Sen. Morris:** Not specifically. No

*01:30:22:12* — **Sen. Duplessis:** Not specifically. Was there anything?

*01:30:26:15* — **Sen. Morris:** Well, we have the Supreme Court data, just like the statistics I read off a minute ago. It came from there.

*01:30:32:09* — **Sen. Duplessis:** And was there anything in the Supreme Court data that suggested that civil district court was inefficient, or that the criminal District court was inefficient?

*01:30:41:00* — **Sen. Morris:** No, I don't know that they well, we're talking about the clerk's office, right?

*01:30:44:20* — **Sen. Duplessis:** We're talking about the clerk's office. Yeah.

*01:30:45:23* — **Sen. Morris**: I don't recall there being any. There might be some, but I don't know.

*01:30:50:24* — **Sen. Duplessis**: Okay. So, so there was no study, no report that we're aware of that pointed to any inefficiencies with the clerk's office that you're aware of.

*01:30:58:26* — **Sen. Morris**: No studies. I think there are. But but anyway. But that's.

*01:31:02:23* — **Sen. Duplessis**: You think there are. But okay. But but we're not sure.

*01:31:06:08* — **Sen. Morris**: No, I believe there are. And that's one of the reasons I brought the bill.

*01:31:10:09* — **Sen. Duplessis**: What are the reports?

*01:31:11:22* — **Sen. Morris**: Well, for example, in the audit report.

*01:31:14:18* — **Sen. Duplessis**: What audit report.

*01:31:15:21* — **Sen. Morris**: By the legislative auditor.

**Sen. Duplessis**: Okay

**Sen. Morris**: For the, that whereby they audited the CDC, and they found that, That, there's a category of expenses that total almost $6 million for operating services. Whereas East Baton Rouge Parish, which is larger, handles more business, has $1.7 million dollars and 1.791 million dollars. So, there's Well over double the amount of, of, operating services.

*01:32:04:02* — **Sen. Duplessis**: In terms of costs.

*01:32:05:13* — **Sen. Morris**: Yes.

*01:32:06:11* — **Sen. Duplessis**: Okay. So is that a suggestion that our court is less efficient at civil.

**Sen. Morris**: Yeah. I think that does, that is data that suggests that.

*01:32:15:26* — **Sen. Duplessis**: You base that purely off of, off of…

*01:32:19:14* — **Sen Morris**: Comparing it to other clerks' offices.

*01:32:21:22* — **Sen. Duplessis**: But doesn't the Orleans Criminal District Court clerk have statutory fees that they don't retain all of those funds they have? Like so she may collect those funds, but those funds also have to be remitted to various Agencies

**Sen. Morris**: That those those are different. That's not including the operating services. That's not passed through these.

*01:32:39:18* — **Sen. Duplessis**: Okay. The, so outside of this this legislative audit with these two numbers that we have here, what is the projected cost savings of this legislation?

*01:32:55:13* — **Sen. Morris**: Well, I think at a minimum, shes's gonna be able to save that extra 10% that we took. So, from the judicial expense fund, and I think that there are ways by which she can do it, by reducing these operating expenses,

**Sen. Duplessis**: was those—

**Sen. Morris**: that are really out of whack.

*01:33:13:09* — **Sen. Duplessis**: Okay. I'm sorry. Was there a report done by the legislature, the legislative fiscal Office, to make that determination or prediction that she's going to save this?

*01:33:25:17* — **Sen. Morris**: No.

*01:33:27:08* — **Sen. Duplessis**: Does this bill have a fiscal note?

*01:33:29:16* — **Sen. Morris**: It does. I, I, it's been, I don't know if we've got a new one with that reengrossed after the amendment yesterday, but.

*01:33:39:10* — **Sen. Duplessis**: So, does the fiscal note suggest we're going to save money or are we going to spend money?

*01:33:42:27* — **Sen. Morris**: It's indeterminate.

*01:33:44:23* — **Sen. Duplessis**: So, we don't know.

**Sen. Morris**: Well

**Sen. Duplessis**: So, we could be spending more than we save?

*01:33:48:27* — **Sen. Morris**: I don't think so. You know.

*01:33:51:26* — **Sen. Duplessis**: But we don't.

*01:33:52:07* — **Sen. Morris**: Fiscal notes or guess is anyway. Right. So, we can guess. LFO can guess. You know, a lot of times when they do the fiscal notes, they call the office and ask, are you going to save money? And, you know, if you're in a place where you're in charge of the budget and you want to get as much money as you can, do, you tell them, oh, yeah, we're going to save a ton of money from

this. So, so that's how they get their information.

*01:34:14:19* — **Sen. Duplessis**: They just we just going to discredit the work of the fiscal office?

*01:34:17:19* — **Sen. Morris**: No, but we have to take it with a grain of salt.

*01:34:19:26* — **Sen. Duplessis**: Okay. And I'm just trying to of what the fiscal office says in this case.

*01:34:25:23* — **Sen. Morris**: Well, we can pull up the fiscal note and then read it.

*01:34:27:23* — **Sen. Duplessis**: Okay, I'll do that. Let's talk about the, the case management system a little bit. Are you familiar with the type of case management system that's used at criminal district court?

*01:34:37:06* — **Sen. Morris**: No, but I hear it's in, inadequate, but or the the data being input into it is is marginal at best. The records are kind of a mess at times.

*01:34:48:12* — **Sen. Duplessis**: Okay. Are you aware that Criminal District Court recently underwent a major overhaul in their case management system?

**Sen. Morris**: No.

**Sen. Duplessis**: Are you aware that it's.

*01:35:00:20* — **Sen. Morris**: Glad that's already done, though.

*01:35:01:24* — **Sen. Duplessis**: Are you aware that it took several years to do that?

*01:35:06:16* — **Sen. Morris**: I'm not shocked by that,

**Sen. Duplessis**: Okay. Are you aware that it had a significant dollar amount associated with it.

**Sen. Morris**: Technology's not cheap.

*01:35:15:27* — **Sen. Duplessis**: Okay. All right. Does civil district court use the same case management system as criminal district court?

*01:35:24:03* — **Sen. Morris**: No.

*01:35:24:21* — **Sen. Duplessis**: Okay, so with this bill, which case management system is

going to get used?

*01:35:32:18* — **Sen. Morris**: That'll be up to the clerk.

*01:35:34:04* — **Sen. Duplessis**: Your bill doesn't, your bill doesn't decide...

*01:35:35:18* — **Sen. Morris**: It doesn't direct them [Duplessis: Okay] to use a particular but you know. You know, the bill basically about all this bill does or the primary thing is that there's, one less clerk and there's one person over it. And then we got the combined office, and we got the combined judicial expense fund. [Duplessis: Okay]. And I think they can probably operate just as well as any other parish in the state.

*01:36:04:18* — **Sen. Duplessis**: Okay. So, this bill puts the civil district clerk in charge. Is that correct?

**Sen. Morris**: Correct.

**Sen. Duplessis**: How did you choose the civil district court clerk as opposed to the criminal district court clerk?

*01:36:15:11* — **Sen. Morris**: Well, the criminal District court clerk was going out. And, Mrs. Napoleon has been there a long time, and she's been through conversions before consolidations, you know, that there was, there used to be multiple, you know, they used to have in New Orleans. They used to have separate notarial offices, a separate, recorder of mortgages, a separate clerk, a separate criminal clerk. And so, we consolidated some of that back, in around 2013, I think.

*01:36:54:00* — **Sen. Duplessis**: It was before then.

*01:36:55:10* — **Sen. Morris**: So, some of it was before them, some was after. But, in any event.

*01:37:00:16* — **Sen. Duplessis**: Was that was that was that consolidation done with the same level of expediency and immediacy as this consolidation?

*01:37:08:08* — **Sen. Morris**: Well.

*01:37:09:24* — **Sen. Duplessis**: And did it not involve representative from New Orleans? I'm sorry.

*01:37:13:19* — **Sen. Morris**: I don't know, but, probably or maybe not, I don't know, I'm sure some opposed it. But, you know, it isn't going to be. I don't think it's going

to be that hard. She's a smart lady, and she can hire someone who does have the knowledge and oversee that person if she wants to. Because none of the staff we have, protections for the staff, at least through the end of the year. And, you know, the staff can keep doing the job that's being done right now, and she may well improve it.

*01:37:51:15* — **Sen. Duplessis**: Okay. How long will the case management system integration take?

*01:37:56:00* — **Sen. Morris**: I don't know.

*01:37:58:13* — **Sen. Duplessis**: What if it takes two years or three years?

*01:38:02:09* — **Sen. Morris**: That I don't know how well she will execute that plan. I mean, sometimes, conversions can take a long time. I've done it in my law firm. You know, where I had at the time I did a conversion. I had 180 people. It took about a month to convert systems. So, it depends on the software. It depends on the vendor. Whether it's good depends on the execution, depends on the determination, depends on the leadership. All that has to fall in place. So, it may take two years. It may take ten years. It may take two months I don't know.

*01:38:32:16* — **Sen. Duplessis**: I'm glad you brought up the point about the law firm because you just sold your law firm, right? We talked about.

*01:38:37:10* — **Sen. Morris**: Yeah, yeah.

*01:38:39:03* — **Sen. Duplessis**: When you went through this process and decided to make the transition, you have a system that you have built over 40 years and whatever firm or entity that you decided to sell to, they have systems and they have operations. Right. And there's a thing called integration that took place. Right? Right. You all came up with a plan to get that integration, right.

*01:39:06:07* — **Sen. Morris**: They did primarily, but yes. Okay. We were involved to a degree, but it was it was their baby.

*01:39:13:05* — **Sen. Duplessis**: So, so we are doing an integration of two major offices. From what I can see, no clear plan. We're just telling them to do it, figure it out with no assurances or no guidance or really no time.

*01:39:29:00* — **Sen. Morris**: They don't have to have they don't have to integrate systems. They can keep their existing systems just as they are.

*01:39:35:11* — **Sen. Duplessis**: So, is it efficient? I'm sorry. Is it efficient to have two systems.

*01:39:39:07* — **Sen. Morris**: It it might be. It might be because one a criminal system is totally different from a civil system. I mean, the civil system for recordation of mortgages and, and deeds and other real estate instruments is a different system from the case filing system, you know, so they probably I don't know for sure, but I would guess they in the CDC, they probably have 4 or 5 different systems they have to use.

I don't know. But whatever's being done right now, they can continue doing exactly what's being done. Now they're going to have to stay in separate buildings. She can hire somebody if she can't really. I mean, these are all things that she can handle. I'm not saying it will be easy for, but I think she's up to the task.

*01:40:29:07* — **Sen. Duplessis**: But Senator, don't you think it would have made a little more sense if we would have gotten answers to these questions in advance before mandating this change?

*01:40:40:23* — **Sen. Morris**: Well, it's kind of hard to reach in and analyze an office like that. I don't think she wants me going through there rummaging around. But, you know, I believe this is something that can handle. There, there's 63 other clerks that she can lean on. There's an association who knows how to operate. One clerk there are all kinds of resources that are disposal. I'm sure the Clerks Association would help her if she had trouble with it.

*01:41:10:22* — **Sen. Duplessis**: Did anybody from the Clerks Association weigh in on this legislation?

*01:41:14:00* — **Sen. Morris**: I think they stayed neutral on it. I'm not sure they didn't come to the table. They didn't put in cards. But, I mean, obviously they're aware of it.

*01:41:25:12* — **Sen. Duplessis**: Did you talk to any other clerks about this bill?

*01:41:28:26* — **Sen. Morris**: I talked to a few clerks, but.

*01:41:31:03* — **Sen. Duplessis**: Do you know, do you know who Darren Lombardi is?

*01:41:33:18* — **Sen. Morris**: Yeah. Yeah. Okay. Outgoing clerk.

*01:41:35:13* — **Sen. Duplessis**: He's the outgoing clerk. He. He lost the election to the newly elected clerk, Calvin Duncan.

*01:41:42:24* — **Sen. Morris**: Right.

*01:41:45:18* — **Sen. Duplessis**: Did you talk to him?

*01:41:48:08* — **Sen. Morris**: No, I did not talk to him. [Sen. Duplessis: Okay]. I talked to Mr. Duncan, but I didn't talk to him.

*01:41:52:06* — **Sen. Duplessis**: Okay? Could could Mr. Lombard not have provided valuable information on the operations of Criminal District Court? [Sen. Morris: I'm sure] in the clerk's office.

*01:42:02:08* — **Sen. Morris**: Sure, he can.

*01:42:03:18* — **Sen. Duplessis**: Because he. Because at this point, he has no political vested interests. I mean, he's he's on his way out, right?

*01:42:09:00* — **Sen. Morris**: He might be a little bit bitter about losing the election. I don't know, I don't know him, but I'm sure Miss Napoleon can lean on him. And he would be, I would assume he would be glad to help her if she needed it.

*01:42:20:04* — **Sen. Duplessis**: Do you know that Mr. Darren Lombard, the outgoing clerk of Criminal District Court, who was who was who was not reelected to his job, right, and has no political benefit or vested interest in, really any of this. Do you know that he has come out publicly in opposition to this bill?

*01:42:41:29* — **Sen. Morris**: I wouldn't shock most people don't like change.

*01:42:44:20* — **Sen. Duplessis**: But it wouldn't be change for him. The only change for him is that he's not going to be the clerk.

*01:42:48:03* — **Sen. Morris**: It’s still change though people get comfortable and could like the system could it could have benefited my guess.

*01:42:55:05* — **Sen. Duplessis**: I'm sorry.

*01:42:56:03* — **Sen. Morris**: Go ahead. I'm done.

*01:42:58:10* — **Sen. Duplessis**: Could it be because he knows the system and he knows that this is Bill could actually be making the office less efficient and less effective.

*01:43:06:25* — **Sen. Morris**: Maybe that's his opinion, but.

*01:43:08:14* — **Sen. Duplessis**: Could it be.

*01:43:08:24* — **Sen. Morris**: It could be. Could it could be. Could be is I don't think is a good reason, but I think it could be his reason.

*01:43:16:21* — **Sen. Duplessis:** But we don't know it.

*01:43:19:01* — **Sen. Morris**: Well, I have more faith in Mr. Napoleon than you do, apparently.

*01:43:23:05* — **Sen. Duplessis**: You know, I have a lot of faith in Miss Napoleon, and I have so much faith in her. I trust her word when she tells me that this is actually going to. Hurt her. In her office. So that's how much faith I have in her.

*01:43:36:28* — **Sen. Morris**: Okay.

*01:43:37:15* — **Sen. Duplessis**: As you know, as do the people of the city of New Orleans. So, in committee, I tried to watch some of the committee hearing when, when these bills came up. And I'm pretty sure I heard you mention that there were people in the city of New Orleans, specifically in local government, who were neutral on this bill. Is that the case?

*01:44:03:10* — **Sen. Morris**: There they were. But I think they kind of, I don't know, I don't want to speak for anybody else, but.

*01:44:08:26* — **Sen. Duplessis**: Well, you did in committee, so I'm asking you.

*01:44:11:05* — **Sen. Morris**: Well, I mentioned, like your predecessor, JP morrell said.

*01:44:16:03* — **Sen. Duplessis**: That he was not my Predecessor.

*01:44:17:12* — **Sen. Morris**: Oh, well, I forget his his place. You who took his place? I can't remember. But a former senator who's now on the city council said that CDC is swimming in as much money as Scrooge McDuck. So, his point being that the CDC is swimming in money and that they had plenty of money to to do their job. So. And that doesn't seem like he was totally against the merging of the courts and courts. Okay. But I'm not going to speak for him, but

*Missing time* — **Sen. Duplessis**: Okay. I was. Just trying to reasonably imply that from just trying to it. Was just trying to get some get some clarification.

I want to just move briefly to a point that we were making earlier and had to do with the amendment that I offered that was that was not accepted. And that has to do with the the democratic process. As you know, as has been said repeatedly, Mr. Duncan was elected overwhelmingly, nearly 70% of the voters of Orleans Parish saw it fit to vote him in office against an incumbent.

That election took place. And I want to make this question not about Mr. Duncan. I want to make it about the democratic process and respect for the people's choices. When a city or a parish, whether it be Orleans or whether it be wash, Tall, West, West Monroe, Union Parish, East Baton. Rouge, Calcasieu, Caddo. When a when a parish makes a decision, especially in such an overwhelming manner, is that not something that we have respect for?

*01:46:05:05* — **Sen. Morris**: I'm not disrespecting the election. I'm just saying that we need to consolidate the offices like every other parish in the state.

*01:46:12:19* — **Sen. Duplessis**: If we needed to consolidate the offices so bad, why wasn't this bill brought last year?

*01:46:19:00* — **Sen. Morris**: Well. I don't know. I didn't think about bringing it last year. And this is in the governor's package. So maybe it's something got his attention as well. But, you know, this, an effort to do this has been done in the past, and a bill to do this very thing was passed out of the House, I think, in 2006.

*01:46:42:16* — **Sen. Duplessis**: Who was the author of that bill?

*01:46:44:04* — **Sen. Morris**: Pepe. Bruno.

*01:46:44:29* — **Sen. Duplessis**: Where was he from?

*01:46:46:07* — **Sen. Morris**: Jefferson Parish. Was it was he, or Orleans. I can't remember. Do they have both? They have both in his district, I don't know, I don't know his district lines. You tell me.

01:46:57:25 — **Sen. Duplessis**: Well, you brought it up, so I'm just trying to guess... He was from Lakeview, which is in Orleans Parish. But that bill didn't pass.

*01:47:04:03* — **Sen. Morris**: Right on the edge of Jefferson Parish…

*01:47:04:29* — **Sen. Duplessis**: It was also it was also, many years ago. And if that if there was a basis for doing that. And I'm here to tell you right now, I'm not saying there isn't a basis for doing it. I just think that we're not using any any real metrics, any data, any study, any. And data from 2026 is not the same. I'm sorry, data from date 2006 isn't the same as data from 2026, but I'm going to I'm going to move on.

Another amendment that you just made yesterday was that the bill would take effect upon the signature of the governor. Why did you make that amendment?

*01:47:45:18* — **Sen. Morris**: To try to get it. Go ahead and get it done before Mr. Duncan

takes office.

*01:47:51:09* — **Sen. Duplessis**: Okay, so that amendment was put on for the square purpose and the sole purpose of getting a signed into law, [Morris: right, otherwise] before he could take office.

*01:48:00:14* — **Sen. Morris**: Yeah. Otherwise, we probably have to pay him for four years. You know, in a job that is going to be eliminated. So, it'd make an immediate lame duck.

*01:48:15:00* — **Sen. Duplessis**: Have there been any conversations with the Attorney General's office around whether or not this could potentially create any legal claims?

*01:48:23:28* — **Sen. Morris**: I haven't asked the AG's office, but…

*01:48:26:16* — **Sen. Duplessis:** This something you've thought about?

*01:48:28:15* — **Sen. Morris**: Yeah. My understanding is that there's a law in the Constitution. So, once he takes office, we can't shorten his office. So that's that much is clear. So, I'm told that that that, they don't think there's going to be a constitutional problem with, with going forward on this, but.

*01:48:50:01* — **Sen. Duplessis**: Okay. And you don't you don't believe that the people of New Orleans deserved to have him seated as the clerk of criminal District court.

*01:48:57:27* — **Sen. Morris**: I think we need to consolidate the two offices just like every other parish.

*01:49:01:15* — **Sen. Duplessis:** Thank you.

**Sen. Morris**: Thank you.

*01:49:08:10* — **Pres. Henry**: Senator Boudreaux, for the floor on the bill.

*01:49:20:21* — **Sen. Boudreaux**: Thank you, Mr. President. Members, I rise in opposition to the bill. Been around long enough to know that change does come, and you can't fight change. My opposition is based on the fact that the voters in Orleans, followed all of the the rules and regulations. We had an election there and the candidate was selected by the people. I voted for the amendments that were offered to adjust the time frame, so that we don't rush into something and take away what people voted for. Again, all of the rules and regulations were followed.

The timing of this comes when they're going to be even more questions that we won't be able to answer. My preference would have been for us to allow this individual to serve and make the effective date at the end of his term. That is not what is in the bill today. My opposition is not against change, but against efficiency when it is done with the proper format and in the proper timing. Thank you.

*01:50:48:11* — **Pres. Henry**: Senator Duplessis to the floor on the bill.

*01:51:00:01* — **Sen Duplessis**: Thank you, Mr. President. Members, I have and take no pleasure asking Senator Morris the questions I asked him. I have no pleasure enjoying coming to this well, right now. primarily because I know there's nothing I can say to change how you're going to vote. But I have an obligation, and I have a duty to Speak when something wrong is happening. And this is wrong. I've been in this building now for eight years. Four in the House, four in the Senate. And it is an incredible privilege, an incredible honor to serve the people Of New Orleans and the people of Louisiana.

I've seen some things in my eight years here. But nothing like This. Nothing like this. This is deeply Troubling. And I know that I'm not the only person troubled by it. I know that there are people who are going to vote for this bill who are also troubled by it.

But that's where we are. And I guess we all just have to accept it.

I just thought. That. It was important for me to just give a little bit of history. And I think it's funny because they say there's really nothing new under the sun. You know, in 1968 Sorry. 1868. There's a man named John Willis Menard. I don't know if you all know who that is. John Willis Menard was from New Orleans. He ran. He was elected to serve the people in Congress. He was elected by 64% of the vote. Mr. Menard was the first black man ever elected to Congress in the history of this country. Mr. Menard went to Washington. He made his case. He said, I was elected by 64% of the vote. He stood on the floor. But was never allowed to serve.

I'm not making this up. I'm just repeating what happened. In the same era. PBS Pinchback. We all know him. For the few days he served as the first black governor of Louisiana. But we often don't hear the story about when he ran and was elected to serve in the U.S. Senate and was not allowed to serve for whatever reasons were given, just like whatever reasons were given today, why Calvin Duncan will not be allowed to serve.

I have never seen something so barbaric. This will not improve efficiency. This will not improve outcomes. This will create inefficiency. It will stall the work of the clerk's office. It will reduce funding for the clerk's office. It will lead to

poorer outcomes because if you have one broken system and another broken system, and as it has been described by Senator Morris, and you combine those two broken systems with no plan, no path for transition, effective immediately, what do you think you're going to get? You're going to get an even bigger broken system.

Now, I'm not suggesting that there aren't changes we can't make. I think that there are. But not like this. And we all know it. I understand politics and I understand you all are going to vote how you're going to vote. But just know. When we're all done here. And We go on with our lives. History has a record. It's just like I read the record from 1868. This history, this will be recorded a century from now, two centuries from now. What side of you on?

*01:56:24:18* — **Pres. Henry**: Okay, the is clear, Senator Morris to close on your Bill.

*01:56:31:09* — **Sen Morris**: Thank you, Mr. President. Members, I respect, Senator Duplessis' passion for doing what he believes is right for his city. I do not begrudge him that at all. And I respect that things, some bad things happened in the past in our state, in the 1800s particularly, but this has nothing to do with that. You know, that that was a horrendous thing that happened back then where, an African-American person was denied access to Congress, but that that didn't what's happening here? The the the surviving clerk is African-American herself, and she's a woman, which, you know, I don't know if there were any women in Congress in 1868. Probably not. But the practical thing here is there's never going to be a good time when somebody is going to really like this bill, whether it takes effect in a few years and somebody is an incumbent, and then you want to take away their job or somebody that's never even started the job yet. I think it seems like the timing is better now. Rather than wait till somebody is already committed to a career being in the as a clerk of court. And, I feel like, Mr. Duncan has a law degree, I think he's probably got, good prospects in his world. And, and I wish him the best, but, it's time to bring the consolidation to this district, to this clerk's office, just like every other parish in the state that most of all of you represent. So, with that, I ask for your favorable passage. Thank you.

*01:58:22:26* — **Pres. Henry**: Sir, more so far past Senate Bill 256, when the machines are open, others in favor of yes. Position to open the machines, vote your machines members, vote your machines.

Madam Secretary, closing 25 yeas and 11 nays. Bill is finally passed. Senator Morris moved to {inaudible}. Past objection. Next bill.

**(End Transcript)**